## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CRISTIAN VELASQUEZ RODAS,

|  |  |
|---|---|
| Petitioner, | Case No. 26-10675 |
| v. | Hon. Jonathan J.C. Grey |

KEVIN RAYCRAFT, *et al.*,

Respondents.

_____/

## OPINION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS (ECF No. 1)

### I.    INTRODUCTION

Before the Court is Petitioner Cristian Velasquez Rodas' petition for writ of habeas corpus ("petition"), filed pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at Monroe County Jail, in violation of the Immigration and Nationality Act ("INA"), bond regulations, the Suspension Clause, and the Due Process Clause of the Fifth Amendment.[1] (ECF No. 1.) Immigration removal proceedings are currently pending against Velasquez Rodas.

---

[1] Pursuant to the stipulation of the parties and Fed. R. Civ. P. 41(a)(1)(A)(ii), the Court dismissed without prejudice Count III of Velasquez Rodas' petition, which asserts a claim under the Administrative Procedure Act. (ECF No. 3.)

The petition is fully briefed (ECF Nos. 5–6.) On April 17, 2026, the Court held a hearing on the petition and issued a bench order **GRANTING** the petition.[2] For the reasons below, and for the reasons stated on the record, this Court finds that Velasquez Rodas' detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and without a bond hearing violates his due process rights and **ORDERS** he be immediately released.[3]

## II.   BACKGROUND

Velasquez Rodas is a 21-year-old native of Guatemala who entered the United States in August 2021 at age 17 as an unaccompanied minor. (ECF No. 1, PageID.1.) He has continuously resided in Florida since his arrival, established strong ties to his community, and has no criminal record. (*Id.* at PageID.1, 14.) On March 20, 2022, Velasquez Rodas petitioned for Special Immigrant Juvenile ("SIJ") status. (*Id.* at PageID.13.) On January 24, 2023, USCIS approved his application and simultaneously granted deferred action, which is valid until January 24, 2027. (*Id.*)

---

[2] On April 17, 2025, the Court also issued a text-only order.

[3] In its text-only order, the Court ordered Velasquez Rodas be released from custody within 72 hours of the order. Respondents certified their compliance with the Court's order and released Velasquez Rodas. (ECF No. 10.) Thus, no further action is required.

On July 8, 2025, United States Immigration and Customs Enforcement ("ICE"), in coordination with the United States Department of Justice, announced a new governmental policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." (*Id.* at PageID.8.) This policy "claims that all persons who entered the United States without inspection shall now be subject to mandatory detention under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended." (*Id.*)

On December 21, 2025, in Florida, Velasquez Rodas' aunt got into car accident and called him for assistance. (*Id.* at PageID.13.) When Velasquez Rodas went to his aunt's aid, he was arrested on site and subsequently transferred to Monroe County Michigan Jail.[4] (*Id.*) The Court has not received a police report. He remained detained through on or about April 20, 2026 at Monroe County Jail with no opportunity for an individualized bond hearing to assess his flight risk or dangerousness. (*Id.* at PageID.13–14.) DHS placed Velasquez Rodas in removal proceedings pursuant to 8 U.S.C. § 1229a and charged him as

---

[4] It remains unclear why the government moved Velasquez Rodas from Florida to Michigan.

inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole. (*Id.* at PageID.14.)

On February 26, 2026, Velasquez Rodas filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, alleging violations of the INA, bond regulations, the Suspension Clause, and the Fifth Amendment Due Process Clause. (ECF No. 1.) Velasquez Rodas asserts that, having been charged with, inter alia, entering the United States without inspection and pursuant to 8 U.S.C. § 1226(a), he is entitled to release, or at minimum, a bond determination.

Respondents argue that Velasquez Rodas' detention is lawful under the INA. Specifically, they assert that Velasquez Rodas is properly detained pursuant to § 1225(b)(2), a mandatory detention provision, and not § 1226(a), a discretionary detention framework, so his detention does not violate his due process rights. (ECF No. 5.)

## III. LEGAL STANDARD

### A. INA Detention Provisions

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting

4

28 U.S.C. § 2241(c)(3)). Two sections of the INA principally govern detention of noncitizens pending removal proceedings. *See* 8 U.S.C. §§ 1225, 1226.

Section 1225 is a *mandatory* detention provision that states, in relevant part:

> **(2)** **INSPECTION OF OTHER ALIENS**
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226 instead provides for a *discretionary* detention framework. It states, in relevant part:

**(a)** **ARREST, DETENTION, AND RELEASE**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a). Section 1226(c), however, provides for mandatory detention of certain inadmissible or deportable noncitizens who have been charged with, arrested for, convicted of, or admit having committed specific listed crimes.[5] Unlike noncitizens detained under § 1225, and those who are excepted under § 1226(c), "noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. [sic] a bond hearing) before an Immigration Judge." *Lopez-Campos*, 797 F. Supp. 3d at 777 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)).

---

[5] This section was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

### B.   SIJ and Deferred Action

#### 1.   SIJ

"SIJS classification provides immigration relief for foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence." *Gaspar v. Akshar*, No. 9:26-cv-00118 (BKS), 2026 WL 699369, at *2 (N.D.N.Y. Feb. 17, 2026) (internal quotation marks and citations omitted). To qualify for SIJ status, a noncitizen must be: (1) under 21 years of age at the time of filing the [SIJ] petition; (2) unmarried at the time of filing and adjudication; and (3) physically present in the United States. 8 C.F.R. § 204.11(b). Moreover, a state court must make specific predicate findings, including that: (1) the noncitizen child has been declared dependent on the court or placed in the custody of a state agency, guardian, or other court-appointed custodian; (2) reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law; and (3) it would not be in the child's best interest to return to his country of nationality or last

7

habitual residence. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). USCIS holds the exclusive authority to adjudicate the petition and must consent to the grant of SIJ classification. *See* 8 U.S.C. § 1101(a)(27)(J)(iii).

The INA renders SIJ recipients eligible to apply for adjustment of status—in other words, SIJ status provides a pathway to lawful permanent residence. *See* 8 U.S.C. § 1153(b)(4). Moreover, SIJ beneficiaries are deemed, for purposes of adjustment of status, to have been paroled into the United States and are exempt from certain inadmissibility bars that would otherwise preclude adjustment. 8 U.S.C. §§ 1255(h)(1)–(2). However, they may only apply for adjustment once "an immigrant visa is immediately available." 8 U.S.C. § 1255(a).

### 2.   *Deferred Action*

In 2022, due to a backlog of approved SIJ petitioners who could not yet apply for adjustment of status, USCIS announced a policy under which it would automatically consider SIJ beneficiaries for deferred action.[6] Deferred action is "'an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen's] case

---

[6] On June 6, 2025, USCIS rescinded this policy. USCIS, *Special Immigrant Juveniles*, https://www.uscis.gov/working-in-US/eb4/SIJ. Then, on November 2025, a district court stayed the rescission. *Id.*

being made a lower priority for removal' but 'does not confer any immigration status upon a[] [noncitizen].'" *Victor G. v. Lyons*, No. 26-CV-119 (ECT/SGE), 2026 WL 127733, at \*2 (D. Minn. Jan. 17, 2026) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999)).

## IV.   ANALYSIS

### A.   Proper Respondents

Velasquez Rodas files this petition against ICE Detroit Field Office Director Kevin Raycraft ("Raycraft"), Secretary of the United States Department of Homeland Security Markwayne Mullin ("Mullin"),[7] and United States Attorney General Pamela Bondi ("Bondi").

The government argues that the only proper respondent to this action is the warden of the Monroe County Jail.[8] (ECF No. 5, PageID.70.) The government relies on *Rumsfeld v. Padilla*, 542 U.S. 426, 435–442 (2004) for the proposition that the warden, who is the "immediate *physical* custodian, as opposed to someone who exercises *constructive*

---

[7] At the time of filing, Kristi Noem was the Secretary of Homeland Security. As of March 24, 2026, Markwayne Mullin was confirmed to replace Noem. Thus, pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Mullin as defendant.

[8] Alternatively, the government asserts that Raycraft is the "only proper respondent" "if the Court applies the legal control test (which it should not because that test is inconsistent with *Padilla*)[.]" (ECF No. 5, PageID.70–71.)

9

*legal* custody over the petitioner" is the "proper respondent." *Aguilar v. Dunbar*, No. 2:25-cv-12831, 2025 WL 3281540, at \*\*2–3 (E.D. Mich. Nov. 13, 2025) (emphasis in original) (citing *Padilla*, 542 U.S. at 438–440).

Recently, a court in the Eastern District of Michigan considered this argument, which was raised by the government in a similar habeas petition, and found that, based on *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), Raycraft and Bondi were, in fact, properly named as respondents. *See Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286, at \*3, \*5 (E.D. Mich. Nov. 21, 2025).

This Court agrees with the reasoning in *Romero Garcia*:

In *Roman*, the Sixth Circuit held that the INS District Director[9] for the district where a detention facility is located is the proper respondent for a petitioner facing removal proceedings, because the District Director has power over that petitioner. 340 F.3d at 320. In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. at 435. However, while setting a general rule, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by [a noncitizen] detained pending deportation." *Padilla*, 542 U.S. at 435 n.8. Courts in this district and circuit

---

[9] "INS' 'District Directors' are the same as today's ICE Field Office Directors." *Romero Garcia*, 2025 WL 3252286, at \*2 n.2 (citing *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006)).

> have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla.*

*Romero Garcia*, 2025 WL 3252286, at \*2. Just as in *Romero Garcia*, this Court finds that Velasquez Rodas is currently in removal proceedings and that Raycraft, who controls the release of Velasquez Rodas, is properly named a respondent.

Further, "[k]eeping U.S. Attorney General Bondi in the case is also warranted to ensure that Respondents maintain authority to enforce any grant of habeas relief and order that [Velasquez Rodas] receive a bond hearing or, alternatively, be released even if [Velasquez Rodas is] transferred out of the district under Raycraft's control." *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at \*2 (E.D. Mich. Dec. 11, 2025) (citing *Romero Garcia*, 2025 WL 3252286, at \*5).

Thus, the Court finds that Raycraft and Bondi are properly named respondents in this action and **DISMISSES** Mullin.

### B.   Statutory Interpretation

The central question of this habeas petition is whether the mandatory detention framework under § 1225(b)(2)(A) or the discretionary detention framework under § 1226 applies to Velasquez

11

Rodas. Velasquez Rodas maintains that "§ 1225(b)(2)(A) applies only to *arriving [noncitizens]* or to n*oncitizens caught in the act of seeking admission* at a port of entry[,]" which he is not, whereas § 1226 encompasses people like Velasquez Rodas who have been residing in the interior of the country for years. (ECF No. 1, PageID.15 (emphasis in original).) Respondents counter that Velasquez Rodas is properly detained under § 1225(b)(2) because he meets every element in the text of the statute; and even if the text were ambiguous, the structure and history of the statute support the agency's interpretation. (ECF No. 5, PageID.71–87.)

Having reviewed many of these cases, this Court is particularly persuaded by the reasoning in two opinions: *Lopez-Campos*, 797 F. Supp. 3d 771; and *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem,* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). For the reasons stated below, the Court finds that Velasquez Rodas has been unlawfully detained under § 1225(b)(2)(A) and orders his release.

### *i.  Interpretation of the Plain Text*

The Court begins its review on the merits by examining the plain

12

text of the relevant statutory provisions. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022)(citation omitted) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word of the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky*, 23 F.4th at 603 (citations omitted). "Barring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Bautista*, 813 F. Supp. 3d at 1103 (citation omitted). Applying these canons here, the Court finds that Velasquez Rodas is unlawfully detained under § 1225(b)(2)(A).

As the court in *Bautista* reasoned, the INA's definition section "readily resolves" the parties' dispute over statutory interpretation and supports Velasquez Rodas' reading of the statute. *Id.* at 1103–1104. Section 1225(b)(2)(A) applies to a noncitizen who is "an applicant for admission," which § 1225(a)(1) defines, in relevant part, as a noncitizen "present in the United States who has not been admitted[.]" Section

1101(a)(13)(A) of the INA's definition section provides that "admitted" means "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." Thus, applicants for admission are noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer*." *See* § 1101(a)(13)(A) (emphasis added); § 1225(a)(1).

Critically, applying the INA's definition of "admitted" to § 1225(b)(2)(A) unambiguously requires applicants for admission to have undergone inspection and authorization by an immigration officer. This is further supported by the title of § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See Dubin v. United States*, 599 U.S. 110, 120–121 (2023) (internal quotation marks and citations omitted) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). The respondents' definition, which includes all unadmitted noncitizens present in the United States regardless of their proximity to the border and the length of time they have been present in the United States (ECF No. 5, PageID.74), is clearly incompatible with the definition

14

set forth in § 1225(b)(2)(A). To adopt respondents' definition, the Court would have to entirely ignore the INA's definition section—specifically, § 1101(a)(13)(A)—which is contrary to what statutory interpretation dictates. Indeed, as respondents state, "'[w]hen a statute includes an explicit definition, [courts] must follow that definition,' even if it varies from a term's ordinary meaning." (ECF No. 5, PageID.82 (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)).) Respondents, however, ignore the INA's *explicit* definition of "admitted." The Court cannot do the same.

Importantly, respondents also ignore several words in § 1225(b)(2)(A). *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (citation omitted) ("'[E]very clause and word of a statute should have meaning.'"). Section 1225(b)(2)(A) states, "[i]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As courts in this district and other districts have already explained, "seeking" "implies action." *See,*

15

*e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 781; *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (finding that "seeking" suggests action).

Respondents' interpretation is that any noncitizen present in the United States unlawfully, who does not agree to immediately depart, is automatically and perpetually "seeking admission." (*See* ECF No. 5, PageID.74.) Such a reading is far too broad, as evidenced by even respondents' own example. Respondents contend that "[i]n removal proceedings, if an unlawfully admitted noncitizen does not accept removal, he can seek a lawful admission . . . For instance, petitioner cannot plausibly challenge his inadmissibility, but he may apply to cancel his removal and adjust his status[.]" (*Id.* at PageID.74.) Indeed, in this example, the noncitizen had to *apply* for cancellation of removal—in other words, he had to actively seek some kind of immigration relief to be considered "seeking admission."[10] This implies, if not concedes, that the noncitizen was not seeking admission when he was detained.

---

[10] Velasquez Rodas' SIJ status does not change this Court's analysis. *See, e.g.*, *Singh v. Maglinger,* No. 4:26-CV-58-RGJ, 2026 WL 458616, at *7 (W.D. Ky. Feb. 18, 2026) (holding that petitioner with SIJ status who has been in the country for years is not "seeking admission" and differentiating between an "applicant for admission" and "seeking admission"); *see also J.Z.S. v. Fields*, No. 26-80-DLB, 2026 WL 1031320, at *5 n.6 (E.D. Ky. Apr. 16, 2026) (noting that even if the parties contend that the

16

Velasquez Rodas does not satisfy all the elements of § 1225(b)(2)(A). At the time of apprehension, Velasquez Rodas was not presenting himself for admission at or near the border, nor was he applying for any kind of immigration relief that could possibly render him a noncitizen "seeking admission" by respondents' reading.[11]

The Supreme Court's interpretation of when § 1225(b) and § 1226 apply supports this Court's interpretation. In *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), the Supreme Court noted that noncitizens covered by § 1225(b)(1) are those subject to expedited removal, which the government concedes does not apply to Velasquez Rodas. (ECF No. 5,

---

petitioner's SIJ application constitutes "seeking admission," "that fact is not dispositive because he did not apply for SIJS when he was 'arriving' to the United States").

[11] As another court aptly found:
> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

PageID.76 ("petitioner is not in expedited removal").) Then, the Supreme Court explained that § 1225(b)(2) "serves as a catchall provision that applies to all *applicants for admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added).

Moreover, in a separate section of the opinion, the Supreme Court recognized that "*[e]ven once inside the United States*, [noncitizens] do not have an absolute right to remain here . . . Section 1226 generally governs the process of arresting and detaining that group of [noncitizens] pending their removal." *Id.* at 288. The Supreme Court concluded,

> In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289 (emphasis added). The Supreme Court thus clearly envisioned that § 1225(b)(2) and § 1226 exist in harmony and apply to different groups of noncitizens. Indeed, in its analysis, the Supreme Court did not conflate "applicants for admission" who are "seeking admission" with noncitizens already inside the United States more generally.

Respondents admit that *Jennings* characterized § 1226 as applying to noncitizens present in the United States but then argue that the

18

Supreme Court "made it clear that this category of noncitizens only included those that were admitted" because the Supreme Court cited § 1227(a), which only applies to noncitizens in and admitted to the United States. (ECF No. 5, PageID.83.) Respondents' reading of *Jennings* is remarkably selective. Read in its proper context, the Supreme Court cited § 1227(a) as only an "example" of noncitizens who are present in the United States but who may still be detained under § 1226(a) pending their removal. *Jennings*, 583 U.S. at 288.

For the reasons stated above, the plain language of § 1225(b)(2)(A) does not include noncitizens already in the United States who, like Velasquez Rodas, have been living in the country for years.

### ii. *Interpretation of the Statutory Framework*

As the court in *Bautista* found, Velasquez Rodas' and this Court's interpretation of these statutory provisions is the only interpretation that "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101

19

(2012) (internal quotation marks and citation omitted). "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Respondents' interpretation of the INA would render § 1226(c) superfluous. "Section 1226(a) states that noncitizens detained via a warrant while facing removal proceedings may be released on bond or parole '[e]xcept as provided in subsection (c).'" (ECF No. 2, PageID.39 (quoting 8 U.S.C. § 1226(a)).) In other words, § 1226(c) exempts certain noncitizens from § 1226(a)'s discretionary detention scheme by virtue of those noncitizens' criminal histories. Notably, § 1226(c)(1)(E) authorizes the Attorney General to mandatorily detain noncitizens: (1) who are inadmissible under § 1182(a)(6)(A)—the same ground of inadmissibility with which Velasquez Rodas has been charged; **and** (2) whose criminal history meets the criteria outlined in § 1226(c)(1)(E)(ii).[12] To accept

---

[12] The Court also notes that the explicit mention in § 1226 of the same ground of inadmissibility with which Velasquez Rodas has been charged—i.e., § 1182(a)(6)(A)—undercuts respondents' argument that "there is no 'positive repugnancy' between § 1225(b)(2) and § 1226(a)" and that § 1226(a) only "reaches noncitizens that are not covered by § 1225(b)(2)." (ECF No. 5, PageID.80–81.)

respondents' reading—that § 1225(b)(2)(A) subjects every noncitizen who did not lawfully enter the country to mandatory detention—"would strip [§] 1226(c) of meaning," *Monge-Nunez*, 2025 WL 3565348, at \*6, which the canons of statutory interpretation do not allow. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (citation omitted) (rejecting an interpretation of a statute that "render[s] an entire subparagraph meaningless").

It is also worth noting that Congress only recently added § 1226(c)(1)(E) through the enactment of the Laken Riley Act. *See* Pub. L. No. 119-1, 139 Stat 3 (Jan. 29, 2025). "[W]hen Congress acts to amend a statute, we presume it intends its amendments to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at 784 (internal quotation marks omitted) (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, at \*12 (D. Minn. Aug. 15, 2025)).

Beyond just rendering § 1226(c) superfluous, respondents' position "cannot be harmonized with other portions of the INA." *Bautista*, 813 F. Supp. 3d at 1105 (citation omitted). "If the Court were to accept [r]espondents' position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were 'applicants for admission,' then there would be no possible set of noncitizens to which § 1226(a) would apply." *Id.* The Court cannot construe § 1225(b)(2) in such a way that would make other sections of the INA "inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314 (citation omitted).

"Where statutory language is unambiguous and 'the statutory scheme is coherent and consistent,' the Court must end its inquiry." *Bautista*, 813 F. Supp. 3d at 1106 (citation omitted). Because the Court finds the statutory provisions to be unambiguous and consistent with Velasquez Rodas' interpretation, the Court does not undertake consideration of other canons of construction, legislative history and intent, or agency practice.

Accordingly, given the plain text of the statutory provisions, the broader context of the statute, and the INA's recent amendment with the

22

Laken Riley Act, the Court finds that § 1225(b)'s detention framework does not govern Velasquez Rodas' detention.[13]

## C.   Due Process

The Fifth Amendment to the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

Respondents do not dispute that Velasquez Rodas is entitled to due process; instead, they contend that he does not present a plausible due process claim. Specifically, respondents assert that Velasquez Rodas "was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has the right to request bond and appeal any bond decision by the immigration court, and he has been detained by ICE for less than six months." (ECF No. 5,

---

[13] Because the Court finds that Velasquez Rodas is unlawfully detained under § 1225(b)(2)'s detention framework, it need not address Count II of Velasquez Rodas' petition. (*See* ECF No. 1, PageID.17–18.) The Court also need not address Count IV of Velasquez Rodas' petition, which alleges a violation of the Suspension Clause. (*See id.* at PageID.20–22.)

PageID.88.) Had the Court agreed that § 1225(b)(2) applies to Velasquez Rodas, respondents' argument may have merit. But the Court does not agree, as discussed above.

Further, "[t]he Sixth Circuit has also applied the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement." *Id.* Under the *Mathews* test, this Court must consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards;" and (3) "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors strongly favor Velasquez Rodas. First, it is beyond dispute that Velasquez Rodas' liberty is at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 590 (2001). Moreover, at the time he was detained, Velasquez Rodas had a valid

24

grant of deferred action until January 24, 2027. *See Nevarez Jurado v. Freden*, 813 F. Supp. 3d 376, 392 (W.D.N.Y. 2025) (finding that "[t]he first Mathews factor" "weighs decisively" in petitioner's favor who had an unrevoked, unexpired grant of deferred action at the time of arrest); *see also Gaspar*, 2026 WL 699369, at *8 (same).

Second, the absence of a bond hearing inherently creates a high "risk of erroneous deprivation" of his liberty right. In addition, "[t]here is no evidence that there has been any change in circumstances between the grant of deferred action and his detention" or that "anyone considered the fact that [Velasquez Rodas] had been granted deferred action or made any individualized assessment of whether he posed a danger to the community or flight risk. *Id.*

Third, respondents have not shown, and likely cannot show, that they have a significant interest in Velasquez Rodas' continued detention. As the Court has found in other similar habeas cases, it would make little sense for the government to complain about the administrative burden of providing hearings that it has provided for decades. Further, there is no evidence that Velasquez Rodas has any criminal history, is a flight risk, poses any danger to the community, or failed to appear for any

25

immigration proceeding. *See id.* In fact, respondents fail to identify any reason for Velasquez Rodas' detention and given that the government exercised prosecutorial discretion to defer his removal until at least January 24, 2027, any alleged reason under the current facts would belie logic. Accordingly, any minimal interest respondents might have in Velasquez Rodas' detention does not outweigh his liberty interest or the risk of erroneous deprivation. Thus, the Court agrees that Velasquez Rodas' mandatory detention pursuant to § 1225(b)(2) violates his due process rights.

Finally, "[i]n the context of deferred action recipients, district courts have found both immediate release and a bond hearing to be appropriate remedies." *Victor G.*, 2026 WL 127733, at *3 (internal quotation marks and citations omitted); *Nevarez Jurado*, 813 F. Supp. 3d at 393 (citation omitted). Considering the specific facts of this case, the Court finds that Velasquez Rodas' immediate release is appropriate.

## V.    CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Velasquez Rodas' petition for writ of habeas corpus (ECF No. 1) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondent Mullin is

26

**DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Respondents Raycraft and Bondi are enjoined from detaining Velasquez Rodas on the basis of 8 U.S.C. § 1225(b)(2)(A).

In accordance with the Court's oral and text-only order, **IT IS FURTHER ORDERED** that respondents were to immediately release Velasquez Rodas **on or before April 20, 2026**. The government has complied. (*See* ECF No. 10.)

In accordance with the Court's oral and text-only order, **IT IS FURTHER ORDERED** that respondents were to file a status report with this Court **on or before April 21, 2026** to certify compliance. The government has complied. (*See id.*)

**SO ORDERED.**

Date: May 1, 2026                     **s/Jonathan J.C. Grey**
                                      Jonathan J.C. Grey
                                      United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 1, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager

28